

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-29-2003

# Arce-Garibay v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 02-3945

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

## Recommended Citation

"Arce-Garibay v. Atty Gen USA" (2003). *2003 Decisions.* Paper 176.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/176

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 02-3945

ANDRES ARCE-GARIBAY,

Petitioner

v.

JOHN ASHCROFT, Attorney General United States;
ANDREA J. QUARANTILLO, New Jersey District Director, Immigration and
Naturalization Service; IMMIGRATION & NATURALIZATION SERVICE,

Respondents

On Petition for Review of an Order of the
Board of Immigration Appeals
(No. A73 056 090)

Submitted Pursuant to Third Circuit LAR 34.1(a)
October 17, 2003

BEFORE: SLOVITER, ROTH and STAPLETON, Circuit Judges

(Opinion Filed    October 29, 2003    )

OPINION OF THE COURT

STAPLETON, <u>Circuit Judge</u>:

Andres Arce-Garibay, a native and citizen of Peru, seeks review of an order of the Board of Immigration Appeals ("BIA") affirming an Immigration Judge's ("IJ") denial of his application for asylum and withholding of deportation. Because Arce-Garibay was placed in deportation proceedings prior to April 1, 1997, and his final order of deportation was entered by the BIA after October 31, 1996, we have jurisdiction under 8 U.S.C. Section 1105a (1994), as amended by the transitional rules for judicial review in Section 309(c)(4) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub.L. No. 104- 208, 110 Stat. 3009-306, 3009-625 (Sept. 30, 1996) ("IIRIRA"); *see also Ahmed v. Ashcroft,* 341 F.3d 214, 215 (3d Cir. 2003). We will deny the petition for review.

## I.

Because we write exclusively for the benefit of the parties, we will recite only those facts relevant to the issues before us. Arce-Garibay entered the United States without inspection in 1992 and applied for asylum the following year. When the federal government initiated deportation proceedings against him in 1996, he conceded deportability but sought relief under his asylum claim. He also filed a supplemental application.

In 1998, the IJ held a one-day hearing at which Arce-Garibay was the only witness. He testified that he was born and raised in a rural region of Peru that in later

2

years became closely linked with the Shining Path terrorist organization. Arce-Garibay claimed the Shining Path harassed many people in his region to join their cause, but that he refused and in 1978 left for the city of Lima to obtain a secondary education. He subsequently entered a military school in Lima that was affiliated with the Peruvian military. Arce-Garibay testified that during the last year of military school, the Shining Path ambushed a bus in which he was traveling. He claimed the terrorists shot him when they discovered he was associated with the military, but that he was able to escape by diving into nearby bushes.

Following his graduation from military school, Arce-Garibay joined the Peruvian air force as a third-grade officer. He was later promoted to second-grade officer and placed in charge of a company of ninety soldiers. He testified that he was responsible for ensuring the maintenance and repairs of the aircraft at his base, a role which required extra security clearance.

Arce-Garibay testified before the IJ that beginning in 1990 the military began to suspect that he was somehow linked to the Shining Path because of his rural background. He claimed the military interrogated him and tried to force a confession out of him, but that he refused. He allegedly resigned from the military and fled to the United States, but testified that he later learned the military had refused to accept his resignation and had commenced a court martial proceeding against him.

**II.**

3

The IJ denied Arce-Garibay's petition. The IJ discredited the alleged bus attack because it did not appear in Arce-Garibay's original or supplemental asylum applications.[1] The IJ further explained that he found implausible Arce-Garibay's explanation for this omission, which was that he was afraid to reveal too much about himself in his asylum application. The IJ also noted that, even if the story were true, there was no reason to believe the Shining Path was still pursuing Arce-Garibay or would recognize him all these years later. As for the alleged persecution by the Peruvian military, the IJ explained that he had "no way of knowing, on the basis of the evidence before [him], whether that court martial is justified or not." The IJ also noted that it seemed unlikely that the Peruvian military would falsely accuse Arce-Garibay of being associated with the Shining Path, considering the time and effort the military had expended on his education and the level of responsibility assigned to him. Nor was there any corroboration for the claim that the military was singling out soldiers who emanated from a particular region of the country. Accordingly, the IJ found that Arce-Garibay had not carried his burden of proving past persecution and a well-founded fear of future persecution. The IJ did, however, grant Arce-Garibay's request for voluntary departure.

The BIA affirmed the IJ's decision. It observed that the bus attack "has not been shown to be associated with his political opinion, but it was fortuitous, occasioned by the guerrillas' discovery of his military ID." The BIA also remarked that Arce-

---

[1] Although Arce-Garibay's supplemental asylum application mentioned an "attempt on his life," it did not provide any details of this alleged attempt.

4

Garibay had not established that the court martial was "occasioned by his ethnic background and the documents submitted only accuse him of 'errors,' not treason or relations with the Shining Path."

### III.

Under the governing law, we must ascertain whether the BIA's factual determinations are supported by substantial evidence. *Senathirajah v. INS,* 157 F.3d 210, 216 (3d Cir. 1998). We may decline to uphold the BIA's findings only if the evidence compels a contrary conclusion. *INS v. Elias-Zacarias,* 502 U.S. 478, 481 n.1 (1992). We defer to the BIA's interpretation of the Immigration and Nationality Act ("INA") unless the interpretation is "'arbitrary, capricious, or manifestly contrary to the statute.'" *Katsis v. INS,* 997 F.2d 1067, 1070 (3d Cir. 1993) (quoting *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 844 (1984)).

Section 208(b) of the INA, 8 U.S.C. § 1158(b), provides that the Attorney General has discretion to grant asylum to refugees. The INA defines a refugee as a person who is unable or unwilling to return to his country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). The asylum applicant bears the burden of establishing that he falls within this definition. 8 C.F.R. § 208.13(a) (2003). Establishing eligibility for withholding of deportation requires a showing of a "clear probability of persecution," a higher standard than that for asylum.

*INS v. Stevic,* 467 U.S. 407, 430 (1984); *Fatin v. INS,* 12 F.3d 1233, 1238 (3d Cir. 1993).

If an immigration judge finds that a witness's testimony lacks credibility, we have stated that the judge must "offer a specific, cogent reason for [his or her] disbelief." *Senathirajah,* 157 F.3d at 216 (internal quotation marks and citation omitted). Accordingly, we review the proffered "reasons to determine whether they are valid grounds upon which to base a finding that the applicant is not credible." *Id.* (internal quotation marks and citation omitted).

Arce-Garibay contends that the IJ erred as a matter of law when he determined that Arce-Garibay failed to establish that he suffered past persecution or a well-founded fear of future persecution. In support of that contention, Arce-Garibay summarizes his testimony before the IJ and argues that that evidence supports his asylum claim. Although that approach would be sound if we were conducting a plenary review, we review the record solely to determine if there is substantial evidence to support the BIA's decision, *Senathirajah,* 157 F.3d at 216, and we may reverse the findings below *only* if the evidence compels otherwise. *Elias-Zacarias,* 502 U.S. at 481 n.3. Having conducted a close review of the administrative record, we are satisfied that there is substantial evidence to support the BIA's decision.

Arce-Garibay also argues that, if his testimony were deemed credible, he would be eligible for asylum because the Peruvian military allegedly will charge him with being a member of the Shining Path if he returns to Peru. The IJ determined, however,

6

that Arce-Garibay's testimony was not entirely credible and the BIA correctly noted that the documentary evidence submitted in support of Arce-Garibay's asylum application mentions only disciplinary "errors."[2] In addition, we too find it unpersuasive that the Peruvian military would falsely accuse Arce-Garibay -- who was educated and promoted by the military and who was in charge of ninety soldiers and numerous aircraft -- of consorting with the Shining Path simply because he was raised in a part of the country closely linked with that terrorist group.[3]

Accordingly, we will DENY the petition for review of the BIA's decision.

---

[2] We also note that Arce-Garibay's original asylum application made no mention of the court martial proceeding against him.

[3] Although the brief submitted by Arce-Garibay mentions in passing that he is entitled to relief under the Convention Against Torture, he waived this argument by failing to develop it in the body of his brief. *See Reynolds v. Wagner*, 128 F.3d 166, 178 (3d Cir. 1997) ("[A]n argument consisting of no more than a conclusory assertion . . . will be deemed waived."). We also note that this argument was not raised before the BIA. *See Alleyne v. INS*, 879 F.2d 1177, 1182 (3d Cir. 1989) (explaining that courts of appeals lack jurisdiction to entertain arguments not raised in appeal to BIA).

7

TO THE CLERK:

Please file the foregoing not precedential opinion.


/s/ Walter K. Stapleton
_____
Circuit Judge